UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JAMES BURGESS,                                         **FIRST AMENDED COMPLAINT**

                                                       **14 CV 10014 (GBD)**
                                                       **ECF Case**

                    Plaintiff,

      vs.

The CITY OF NEW YORK, POLICE OFFICERS
JULIA AYMAR, Shield 4539,
OSCAR HERITIER, Shield 24283, and
SERGEANT CUONG NGUYEN, Shield 9539,                    **JURY TRIAL DEMANDED**
in their individual and official capacities,

                    Defendants.
--------------------------------------------------------x

Plaintiff James Burgess, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the arrest and prosecution of

James Burgess ("Plaintiff") on the false and fabricated grounds that he acted with one of

his daughters to assault his step-daughter.  Plaintiff asserts constitutional claims pursuant

to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest

and imprisonment, malicious prosecution, and failure to intervene, and a *Monell* claim

against the City of New York for the same constitutional violations.  Additionally,

Plaintiff asserts analogous claims under New York Law against the individual

defendants, and against the City of New York under the doctrine of *respondeat superior*.

Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's

fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   Plaintiff James Burgess is a 50-year-old, African-American male, with no criminal record; he is a United States citizen, and a resident of Philadelphia, PA.

7.   The individually named defendants Police Officer Julia Aymar (Shield # 4539) ("PO Aymar"), Police Officer Oscar Heritier (Shield # 24283) ("PO Heritier"), and Sergeant Cuong Nguyen (Shield #9539) ("Sgt. Nguyen") (collectively, the "individual

defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

8.      On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Housing Bureau Police Service Area 5.

9.      Each individual defendant is sued in his individual and official capacity.  At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI012412.  At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on June 18, 2014.

13.     This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.     On November 29, 2013, Plaintiff – a resident of Philadelphia – was in New York City ("the City") celebrating Thanksgiving with his three daughters – Sharnell

Burgess ("Sharnell"), Aliyah Burgess ("Aliyah"), and K Burgess ("KB").   Plaintiff had

arrived in the City on Thanksgiving morning (November 28, 2013) and planned on taking

a bus back to Philadelphia on the afternoon of November 29, 2013.

15.     Plaintiff and his daughters stayed at the apartment ("the Apartment") of

Plaintiff's step-daughter Simone Morgan ("Ms. Morgan"), located at 1405 Park Avenue

in East Harlem.

16.     Around 1:50 PM, on November 29, 2013 – a few hours before Plaintiff's bus

was scheduled to depart – an altercation between Sharnell and Ms. Morgan took place

inside the Apartment.

17.     The fracas began when Sharnell observed Ms. Morgan harshly yelling at her

two children because they had spilled paper on the floor.  Sharnell told Ms. Morgan to

calm down, saying "It's not serious, it's just paper."  This comment outraged Ms.

Morgan, inciting her to angrily escalate her yelling, lashing out, "Mind your own

business – they need to pick it up!"

18.     Witnessing Ms. Morgan's tirade – besides her children, Sharnell, KB, and

Plaintiff – were her two cousins, Tyeshia Benn ("Tyeshia") and Jessica ("Jessica") Benn.

Aliyah was not present as she had already left the City.

19.     Tyeshia and Jessica also pleaded with Ms. Morgan to calm down.  When Ms.

Morgan ranted about the mess inside the Apartment – which she now blamed on her

guests instead of her children – Tyeshia and Jessica tried consoling Ms. Morgan, offering

to help clean the Apartment, saying that everyone would soon be leaving.  Ms. Morgan

would not calm down, however; she only became more wound-up and upset as everyone

was telling her to relax.

20.     The continuous bickering between Ms. Morgan and Sharnell escalated when Ms. Morgan pushed Sharnell and started striking her; Sharnell put up her arms to defend herself, hitting back, and the two women became entangled.

21.     Plaintiff, Tyeshia, and Jessica went to break up the scuffle, and they separated Sharnell and Ms. Morgan, momentarily ending the physical clash.

22.     In no way during this struggle – or at any other point – did Plaintiff ever assault Ms. Morgan or harm her in any way.  Plaintiff's only desire was that everyone "just relax."

23.     Nevertheless, after the fight was broken up, Ms. Morgan remained angry and directed much of her hostility toward her step-father, Plaintiff.  At one point, while Plaintiff was packing, Simone spat at his face, saying "Get the fuck out!"  Plaintiff remained composed, saying that he was packing up and would soon be gone.

24.     Another heated argument broke out between Sharnell and Ms. Morgan, and again it became physical.  Ms. Morgan picked up a vase and threatened to hit Sharnell with it.  Jessica and Tyeshia broke up this fight, pulling Ms. Morgan away.  Not wanting to provoke Ms. Morgan, Plaintiff did not intervene in this fight.

25.     It had become clear to Plaintiff that this was a very unsafe situation; that he and his two daughters, Sharnell and Kayla, needed to gather their belongings and leave the Apartment as quickly as possible.  Plaintiff called 911, hoping that the NYPD could help to allow Plaintiff and his daughters to leave the Apartment safely with all their possessions.

26.     While Plaintiff continued packing, Ms. Morgan went after him again, this time by punching him in the face.  Nevertheless, Plaintiff remained calm and lucid.  He

realized that his presence was fueling Ms. Morgan's wrath, so he decided to wait in the hallway outside the Apartment with his luggage. Plaintiff directed KB and Sharnell to hurry and bring all their belongings to the hallway; once they had everything, they would leave together.

27.     But that plan would not come to fruition. As Plaintiff stood in the hallway, three uniformed NYPD officers – the individual defendants: PO Aymar, PO Heritier, and Sgt. Nguyen – approached the Apartment. Plaintiff stood outside the Apartment in a calm and dignified manner.

28.     The individual defendants directed Plaintiff to go inside the Apartment, and they all walked inside the Apartment. The individual defendants spoke separately with Ms. Morgan and Sharnell. While PO Heritier and Sgt. Nguyen spoke with Sharnell and Plaintiff in the living room, PO Aymar spoke with Ms. Morgan inside her bedroom.

29.     Ms. Morgan hysterically flung disconnected accusations – "They tried to hit me with this vase! They tried to jump me!" Another lie wildly hurled by Ms. Morgan was that Plaintiff pinned her on the ground so that Sharnell could freely punch Ms. Morgan repeatedly in the face. Ms. Morgan also claimed that her cousins Jessica and Tyeshia attacked her.

30.     Ms. Morgan's narrative about being gang-attacked and repeatedly punched was clearly nonsensical because she simply had disheveled hair and a few small scratches (which Sharnell also had), indicating a minor scuffle. There were no signs of any injuries, nothing congruous with getting punched in the face repeatedly. There were no bruises or lacerations anywhere on Simone's face or body.

31.     Sharnell told PO Heritier and Sgt. Nguyen the truth about what happened. Plaintiff, who stood near Sharnell, confirmed her story, adding that Ms. Morgan had spit at him and punched him just before the police arrived.  Plaintiff spoke truthfully, calmly, and believably, as did Sharnell.

32.     Jessica and Tyeshia, who were also in the living room, also tried telling PO Heritier and Sgt. Nguyen that Ms. Morgan was the aggressor.  But PO Heritier and Sgt. Nguyen ignored them, being indifferent to their accounts, even though Jessica and Tyeshia were first-hand witnesses.

33.     When Jessica and Tyeshia insisted that their observations of the incident were important and that it was the officers' job to listen, PO Heritier and Sgt. Nguyen aggressively silenced Jessica and Tyeshia, telling them to "shut the fuck up" and "sit down," threatening to arrest them if they did not remain silent.  Plaintiff mollified Jessica and Tyeshia, and cautioned them to be quiet.

34.     Meanwhile, KB was moving her luggage, as well as her father's and sister's, down one floor to Jessica's apartment.

35.     A basic, reasonable, and logical investigation of the fracas inside the Apartment would have rejected the outlandish tale of a gang assault (as told by one angry and inconsistent individual) and accepted as more plausible the version of the event as told by Sharnell and corroborated by Plaintiff, Jessica, and Tyeshia, all of whom were measured in their demeanor and language as they spoke the truth.

36.     Nevertheless, after ten minutes inside the Apartment, the individual defendants arrested Plaintiff and Sharnell based on the obviously fabricated account of Ms. Morgan, handcuffing them behind their backs.

37.     The individual defendants saw the mark around Plaintiff's eye from Ms. Morgan's punch, but they saw no such marks on Ms. Morgan.

38.     PO Aymar led the decision to arrest Plaintiff and Sharnell based on Ms. Morgan's unbelievable account.  PO Aymar never cared to speak to the others in the Apartment who all observed and claimed that Ms. Morgan was the aggressor and instigator of the fight.  PO Aymar accepted Ms. Morgan's story without the basic critical scrutiny expected of a reasonable law enforcement officer, without asking follow-up questions to ascertain the veracity of the story, without reasonably judging its plausibility, without concern for the accounts of other witnesses on the scene.

39.     Together, the individual defendants turned a blind eye to the truth, recklessly indifferent to the truth, maliciously choosing to reject a plausible version of events and to accept an implausible version of events.

40.     The individual defendants transported Plaintiff and Sharnell to the Housing Bureau Police Service Area 5 Precinct for processing.  There, Plaintiff was searched, photographed, and fingerprinted, then placed in a holding cell, where he remained for about eight hours.

41.     Around 10 PM, Plaintiff was transported to Central Booking.  After being further processed, Plaintiff spent hours in the holding cells before being arraigned in New York County Criminal Court on Docket 2013NY090418.

42.     The Criminal Court Complaint ("the Complaint") charged Plaintiff – along with Sharnell, his named co-defendant – with three misdemeanors and one violation: Assault in the Third Degree, in violation of NY Penal Law ("PL") 120.00(1); Aggravated Harassment in the Second Degree, in violation of PL 240.30(4); Attempted Assault in the

Third Degree, in violation of PL 110/120.00(1); and Harassment in the Second Degree, in a violation of PL 240.26(1).

43.     The Complaint charged Plaintiff with these crimes on the basis of Ms. Morgan's mendacious account.  The Complaint says:  "Police Officer Julia Aymar…states as follows:  I am informed by Simone Morgan…that she observed defendant Sharnell Bergess [sic] hit her repeatedly about the head and body with a closed fist and scratch her all over her torso.  I am informed by Ms. Morgan that while defendant Sharnell Bergess was hitting and scratching her, she observed defendant James Burgess pull her to the ground and hold her down with his knees, so that defendant Sharnell Bergess could continue to hit and scratch her.  I am informed by Ms. Morgan that the defendants' action caused lacerations to her back, arm, and face."  PO Aymar signed the bottom of the Complaint on November 29, 2013 at 10:53 PM.

44.     At Plaintiff's arraignment, the District Attorney gave notice of Plaintiff's statement to the arresting officer inside the Precinct:  "I didn't touch her.  All I did was try to get her to stop fighting."

45.     Although the District Attorney asked for $1,000 bail to be set on Plaintiff, the arraignment Judge released Plaintiff on his own recognizance, ending about thirty-three hours of unlawful confinement.

46.     Plaintiff was ordered to return to Criminal Court on two occasions – commuting to the City from Philadelphia by bus – before the charges against him were finally dismissed on February 18, 2014 – dismissed because the NY County District Attorney's Office could not acquire the supporting deposition of Ms. Morgan within the 90 day time limit prescribed by the NY Criminal Procedure Law ("CPL") Section 30.30.

47.    The prosecution against Sharnell also concluded with a dismissal of all charges pursuant to CPL 30.30.

48.    The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

49.    There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

50.    The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

51.    Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But when it comes to making false statements on court documents, NYPD officers almost never face discipline.

52.    The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

53.    The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest

people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

54.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

55.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

57.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

58.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

59.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### False Arrest Under Section 1983

60.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

61.    By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

62.    As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

63.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

64.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

65.    By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

66.    Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the D.A..

67.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

68.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

70.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

71.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

### Municipal Liability Under Section 1983

72.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

73.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

74.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PENDENT STATE CLAIMS

### FIRST CLAIM

**False Imprisonment under N.Y. State Law**

75.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

76.     The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

77.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### SECOND CLAIM

**Malicious Prosecution Under N.Y. State Law**

78.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

80.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

### THIRD CLAIM

**Unreasonable Search and Seizure Under New York State Constitution Art. I § 12**

81.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

82.     Article 1, Section 12, of the New York State Constitution declares the right to be free from unreasonable searches and seizures.

83.     Without probable cause and without Plaintiff's consent, the individual defendants arrested Plaintiff, searched his person, took his property, confined him, and initiated false charges against him.

84.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
(Against Defendant City of New York)**

85.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

86.     Defendant City owed a duty of care to Plaintiff to prevent the false arrest, malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

87.     Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

88.     Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

89.     Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

90.     As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

**Respondeat Superior Under N.Y. State Law**

91.     Plaintiff realleges and reiterates all allegations set forth in the preceding

paragraphs as if stated fully herein.

92.     Defendant City is the employer of the individual defendants.

93.     Under the doctrine of *respondeat superior*, the Defendant City is responsible

for the wrongdoing of its employees acting within the scope of their employment – in this

case, the false imprisonment, malicious prosecution, and unreasonable search and seizure

committed by the individual defendants against Plaintiff.

94.     As a direct and proximate result of the acts of the individual defendants

detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally

against the Defendants:

a.     An order awarding compensatory damages for Plaintiff James

Burgess in an amount to be determined at trial;

b.     An order awarding punitive damages in an amount to be

determined at trial;

c.     A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is

entitled to reasonable attorney's fees, costs and disbursements; and

d.     Such other and further relief as this Court may deem appropriate.


DATED:     June 8, 2015                    _____s/_____
           New York, New York             CYRUS JOUBIN, ESQ.
                                          88 Pine St., 14th Floor
                                          New York, NY 10005
                                          (703) 851-2467
                                          joubinlaw@gmail.com
                                          Attorney for James Burgess